UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAVON GORDON,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

Civ. No. 14-6760 (RBK)

**OPINION**

**<u>ROBERT B. KUGLER, U.S.D.J.</u>**

Before the Court is Petitioner Javon Gordon's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. Petitioner's last remaining claim is his ineffective assistance of counsel claim under the Sixth Amendment, that trial counsel ignored his request to file a notice of appeal. For the reasons set forth below, the Court rejects Petitioner's final claim and will deny the remainder of his § 2255 motion.

### I.     BACKGROUND

As the parties are intimately familiar with the facts of this case and because the Court has already set forth the background of this matter in its earlier Opinion, the Court will only set forth the background necessary to address Petitioner's final claim.

In its earlier Opinion, this Court enforced Petitioner's collateral attack waiver on nearly all of his claims, but appointed counsel for Petitioner and directed the parties to submit supplemental briefing on whether the Court should enforce the collateral attack waiver on Petitioner's failure to file a notice of appeal claim, in light of the Supreme Court's decision in *Garza v. Idaho*, 139 S. Ct. 738 (2019).

In *Garza*, the Supreme Court abrogated in part *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008) and concluded that an attorney's constitutionally deficient failure to file a notice of appeal was presumptively prejudicial, *despite an appeal waiver*, if defendant "otherwise would have taken [an appeal]." *Garza*, 139 S. Ct. at 744.

Instead of submitting supplemental briefing, Respondent advised the Court that it did not wish to enforce the collateral attack waiver on this issue and sought a decision on the merits. The Court determined that it could not resolve this issue without holding an evidentiary hearing and held one on October 3, 2019. At the hearing, the Court heard testimony from Petitioner and his trial counsel, Michael E. Riley, Esq., as well as reviewed relevant documentary evidence.

## II. DISCUSSION

In his final claim, Petitioner contends that Mr. Riley was ineffective for failing to file a notice of appeal, despite Petitioner's request that he file an appeal. As discussed in the Court's earlier Opinion, an ineffective assistance of counsel claim has two components. First, a petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" under the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, a petitioner must show that the deficient performance prejudiced him. *Id.*

More specifically, the first prong of the test requires a petitioner to show "that counsel's representation fell below an objective standard of reasonableness." *Lafler v. Cooper*, 566 U.S. 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). The second prong, prejudice, requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

In the notice of appeal context, a "lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores–Ortega,* 528 U.S. 470, 477 (2000). "At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id*.

The Supreme Court went on to address the more common situation, where a defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken," and instructs that in those instances, courts should conduct a "circumstance-specific reasonableness inquiry." *Id*. at 478.

Under that inquiry, courts must determine whether the circumstances gave rise to a duty to consult with the defendant regarding an appeal. *See Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009) (citing *Flores–Ortega*, 528 U.S. at 478). "If counsel has consulted with the defendant [about his right to appeal], the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id*. (alteration in original). The Supreme Court defined "consulting" in this context, as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Id*. (quoting *Flores–Ortega*, 528 U.S. at 478).

On the other hand, if counsel did not consult with the defendant and did not file a notice of appeal, his conduct is unreasonable "when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*.

As to the prejudice prong, an attorney's failure to file a notice of appeal is presumptively prejudicial, if a defendant "otherwise would have taken" an appeal, "with no further showing from the defendant of the merits of his underlying claims." *Garza*, 139 S. Ct. at 742–44 (quoting *Flores–Ortega*, 528 U.S. at 484). When making that determination, a court should consider "the totality of the circumstances surrounding the representation." *Hodge*, 554 F.3d at 381.

As the underlying facts are relevant at times to both *Strickland* prongs, the Court will first summarize the undisputed facts and the Court's factual findings. First, the parties agree that Petitioner did not discuss appealing his sentence until the day after sentencing, when he notified Mr. Riley's secretary that he had some interest in appealing his sentence. (Hr. Tr., at 8).

In response, Mr. Riley sent a letter dated September 20, 2011, advising Petitioner of the dangers in filing an appeal. (Petitioner 1). Mr. Riley advised that if Petitioner appealed, the Government would have the ability to set aside the plea bargain and "would expose [Petitioner] to Judge Kugler and the sentence he wanted desperately to give . . . which was an offense level 37 calculation . . . in excess of 300 months." (*Id.*).

Mr. Riley emphasized that the Court "was very upset about having to sentence [Petitioner] at such a low level" and "really wanted" to sentence him at an offense level of 37. (*Id.*). In light of those realities, Mr. Riley recommended to Petitioner that he accept the sentence pursuant to the plea bargain and strongly recommended against filing an appeal. Mr. Riley also explained all of this information to Petitioner's mother.

The parties agree that Petitioner received Mr. Riley's letter, that Mr. Riley did not follow up to confirm with Petitioner as to his final decision, and that Mr. Riley did not file a notice of appeal, prior to the filing deadline.

What transpired in between and after those final events is in dispute. For the following reasons, the Court finds that Petitioner's version of the events is not credible. Apart from his obvious self-interest, Petitioner offered equivocal testimony regarding his alleged responses to Mr. Riley's September 20, 2011, letter. He allegedly mailed a response to Mr. Riley, stating that he nevertheless wanted to file an appeal, despite Mr. Riley's advice. (Hr. Tr., at 9:20, 27:8–12). Petitioner did not have a copy of this letter, alleging that he must have lost his copy while transferring between facilities. (*Id*. at 13:2 to 14:8). Nor, despite repeated questioning, could Petitioner recall when he allegedly mailed the letter, asserting only that it was "within the window of time [he] was supposed to have it done." (*Id*. at 14:1–13). Petitioner added that he had made another "request" to file an appeal, beyond the appeal deadline, after his transfer to West Virginia in November of 2011, but offered no other details. (*Id*.).

Petitioner then allegedly discussed the appeal by phone with Mr. Riley, sometime after the notice of appeal deadline, but could not specify a time period beyond the year of 2012. Finally, in 2012, Petitioner sent several letters to Mr. Riley requesting transcripts and other documents but could not recall if he mentioned an appeal in any of those letters. (*Id*. at 15:1–6).

In contrast, Mr. Riley offered unequivocal testimony that Petitioner "never directed [him] to file an appeal" but rather, that Petitioner only "wanted to talk about an appeal." (*Id*. at 21:1–7). Mr. Riley was adamant that Petitioner never responded to Mr. Riley's September 20, 2011, letter, in writing or by phone, or that Petitioner otherwise indicated that he "wanted to file a notice of appeal anyway." (*Id*. at 21:8–15).

Further, Mr. Riley advised that if Petitioner had directed him to file an appeal, he would have done so, after notifying him that there was no basis for an appeal. (*Id*. at 21:16 to 22:8). After

5

repeated questioning, Mr. Riley again testified, that he "was never told to or asked to" file a notice of appeal. (*Id.* at 22:9–10).

On cross, Mr. Riley reiterated that Petitioner made no further contact on the subject of taking an appeal. (*Id*. at 25:9–13). According to Mr. Riley, he believed that Petitioner accepted his advice, and decided against filing an appeal. (*Id*. at 25:21–23).

Perhaps most critically, Petitioner has shown throughout his cases that he is a persistent and diligent litigant, who is reasonably cognizant of the workings of the legal system. It is difficult to believe that Petitioner sent a letter rejecting Mr. Riley's advice and directing him to file an appeal, and then made no further mention of an appeal, in writing, until over three years later, in January of 2015, when Petitioner filed his first[1] amended § 2255 motion. (ECF No. 7). Indeed, Petitioner never tried to file a late notice of appeal himself, and the only mention of the appeal issue in either his first or second amended § 2255 motion, is the bare allegation that Mr. Riley failed to file a notice of appeal despite a request to do so. (*Id*. at 9).

Additionally, in September of 2012, approximately one year after sentencing, Petitioner submitted a motion for an extension of time to file his § 2255 motion, as well as a letter to the Court in December of 2012. (Crim. No. 09-20, ECF Nos. 60, 61). The Court would describe these documents as containing a laundry list of Petitioner's grievances against Mr. Riley. Neither of these documents, however, make any mention of Mr. Riley's alleged failure to file a notice of appeal or otherwise mention an appeal, which further detracts from Petitioner's credibility.

Moreover, in his December 2012, letter, Petitioner alleges that he received ineffective assistance of counsel regarding the collateral attack waiver in his plea agreement. (Crim. No. 09-

---

[1] Petitioner had submitted his first amended motion on the incorrect form and later submitted it on the proper form.

6

20, ECF No. 60). It seems dubious to the Court, that Petitioner would not also mention the agreement's direct appeal waiver or Mr. Riley's alleged failure to file a notice of appeal. *Id.*

Taken together, the Court makes the following findings of fact: (1) Petitioner did not mail a response to Mr. Riley's September 20, 2011, letter, or otherwise specifically instruct Mr. Riley to file an appeal; (2) Mr. Riley's September 20, 2011, letter, successfully dissuaded Petitioner from wanting to file an appeal; (3) Mr. Riley was unsure about Petitioner's ultimate wishes regarding the appeal; and (4) Petitioner's renewed desire to appeal arose after the fourteen-day time period to file an appeal.

### A. Deficient Performance

Applying those facts to the framework under *Flores-Ortega*, this is not the simple situation in which a lawyer "disregards *specific instructions* from the defendant to file a notice of appeal." *Flores–Ortega*, 528 U.S. at 477 (emphasis added).

As discussed above, although Petitioner may have initially expressed to Mr. Riley's secretary some interest in appealing, the Court finds that "he did not communicate a definitive intent to appeal or specifically instruct trial counsel to file a notice of appeal." *United States v. Purcell*, 667 F. Supp. 2d 498, 515 (E.D. Pa. 2009), *aff'd*, 517 F. App'x 79 (3d Cir. 2013); *see also*, *e.g.*, *United States v. Jeffries*, 73 F. App'x 535, 536 (3d Cir. 2003)(noting the difference between "discuss[ing] the prospects of success in an appeal" and actually instructing counsel to file one); *Regalado v. United States*, 334 F.3d 520, 525 (6th Cir. 2003) ("although Regalado expressed her desire to file an appeal, she did not specifically instruct [her attorney] to do so"); *United States v. Abdulkader*, No. 16-019, 2019 WL 6351257, at *3 (S.D. Ohio Nov. 27, 2019)("expressing a desire to appeal is distinguishable from an explicit instruction to file an appeal, and this distinction is

7

relevant"); *Hensley v. Cappoza*, No. 18-44, 2019 WL 5457396, at *7 (W.D. Pa. Oct. 24, 2019)(concluding similarly).

The Court will next inquire "whether the circumstances of this case gave rise to a duty to consult with [Petitioner] regarding his appeal." *Purcell*, 667 F. Supp. 2d at 515. As is relevant in the present case, the duty to consult arises, when "there is reason to think . . . that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Flores-Ortega*, 528 U.S. at 480. Petitioner's testimony and Mr. Riley's September 20, 2011, letter, at the very least, show that Petitioner "reasonably demonstrated to counsel that he was interested in appealing." *Id*.

Finally, the Court must "determine if counsel's performance with regard to his duty to consult was deficient." *Purcell*, 667 F. Supp. 2d at 515. The only evidence on this issue is Mr. Riley's September 20, 2011, letter. The Court will assume *arguendo*,[2] that the letter satisfied the first part of *Flores-Ortega*'s definition of consultation and advised Petitioner "about the advantages and disadvantages of taking an appeal." *Flores–Ortega*, 528 U.S. at 478. As to the second consultation requirement, however, Mr. Riley failed to "mak[e] a reasonable effort to discover defendant's wishes." *Id*.

---

[2] The letter only discusses the disadvantages of filing an appeal and does not address any advantages to filing an appeal. As Mr. Riley stated, he "*would* have discussed . . . that there was no basis for appeal," but does not appear to have done so. (Hr. Tr., at 22:2–3 (emphasis added)).

Because the Court finds that Mr. Riley's consultation was deficient for a different reason, and because Petitioner does not challenge the substance of Mr. Riley's consultation, the Court makes no finding on the first *Flores-Ortega* consultation requirement. *Cf. Regalado*, 334 F.3d at 525 (addressing a situation where a petitioner did not allege that counsel "failed to consult her on the benefits and drawbacks of appeal"). In other words, based on Petitioner's version of the events, he rejected Mr. Riley's advice and any additional reasons to reject that advice would not have changed the result of the proceedings.

8

According to Mr. Riley, he believed that Petitioner accepted his advice, and decided against filing an appeal, but that it was "possible" that Petitioner still wanted him to file an appeal. (*Id.* at 25:21 to 26:1).

This Court has held in such situations, that "where a defendant indicates his general desire for an appeal and never expressly states otherwise, an attorney does not meet his obligation to make a reasonable effort to discover his client's wishes where he neglects to take any affirmative action to determine his client's intentions prior to the" notice of appeal deadline. *Valletto v. United States*, 195 F. Supp. 2d 643, 646 (D.N.J. 2002), *aff'd*, 58 F. App'x 931 (3d Cir. 2003); *see, e.g.*, *Battaglini v. United States*, 198 F. Supp. 3d 465, 473 (E.D. Pa. 2016); *United States v. Edwards*, 297 F. Supp. 2d 813, 817 (E.D. Pa. 2003).

Accordingly, under these circumstances, the Court finds that Mr. Riley's performance fell below objectively reasonable standards.

### B. Prejudice

Turning then to the prejudice prong, the Court must consider the totality of the circumstances and decide whether Mr. Riley's deficient performance caused Petitioner to lose an appeal that Petitioner "would have otherwise pursued." *Garza*, 139 S. Ct. at 742. If so, the Court will presume prejudice, without regard "to the merits of his underlying claims." *Id*.

As discussed above, the Court finds that Mr. Riley's September 20, 2011, letter, successfully dissuaded Petitioner from wanting to file an appeal, and that Petitioner's renewed desire to appeal arose after the fourteen-day time period to file an appeal. In making those findings, the Court considered Mr. Riley's credibility and Petitioner's lack thereof, as well as the suspicious absence of any documentary evidence to support Petitioner's interest in an appeal, for nearly three years after sentencing. Once again, the latter is particularly telling, in light of Petitioner's filings

during the intervening period, which contain a laundry list of his grievances against Mr. Riley, but make no mention of an appeal. If Petitioner has any documentary evidence to corroborate his alleged response to Mr. Riley, he did not provide it to this Court.

As a result, despite Mr. Riley's failure to discern Petitioner's final decision on whether to appeal, there was no prejudice because Petitioner "would [not] have appealed"—at least within the notice of appeal time period. *See Flores–Ortega*, 528 U.S. at 486; *cf. Regalado*, 334 F.3d at 526 (discussing a situation in which a petitioner initially wanted to file an appeal, but "acceded to [counsel's] advice not to appeal"). Accordingly, as Petitioner has failed to meet the second prong of *Strickland*, the Court will deny Petitioner's final ineffective assistance of counsel claim.

### III. CERTIFICATE OF APPEALABILITY

The Court must assess whether a certificate of appealability should issue. A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Based on the Court's credibility determinations and factual findings, reasonable jurists would not find it debatable as to whether the failure to file a notice of appeal violated Petitioner's rights under the Sixth Amendment. Consequently, the Court will not issue a certificate of appealability.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the final claim in Petitioner's § 2255 motion and will not issue a certificate of appealability. An appropriate Order follows.

DATED: January 21, 2020

s/Robert B. Kugler
ROBERT B. KUGLER
United States District Judge